T.C. Summary Opinion 2004-143

UNITED STATES TAX COURT

SIOANA U. AND S. MOLI NGATUVAI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10820-03S.              Filed October 18, 2004.

Sioana U. and S. Moli Ngatuvai, pro se.

<u>Mark Howard</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioners are liable for a deficiency in Federal income tax of $5,185 and an accuracy-related penalty under section 6662 of $1,037 for the 2001 taxable year. After concessions,[1] the issue for decision is whether petitioners' gross income for 2001 includes $30,714, the portion of a loan discharged by the United States Department of Agriculture during that taxable year.

Background

Some of the facts have been stipulated, and they are so found. An oral stipulation of facts and the exhibits are incorporated herein by this reference. At the time of filing of their petition, petitioners resided in Provo, Utah.

In 1991, petitioners received a $50,000 loan from the United States Department of Agriculture (USDA). At the time, petitioners were farmers in Hawaii who leased 20 acres of land for a farming operation. The loan, which was secured by the farm,[2] was to be used to make lease payments. It is unclear from the record whether the lease payments were ever made.

---

[1] Respondent concedes that petitioners are not liable for the accuracy-related penalty under sec. 6662 of $1,037 for the 2001 taxable year. Petitioners concede that they are not entitled to an IRA deduction of $300 for the 2001 taxable year.

[2] Petitioners assert that they owned the farm that was used to secure the loan by the USDA. The circumstances surrounding the ownership of this farm are unclear.

In 1992, petitioners discontinued the farming operation and moved to Utah. Petitioners did not make any payments on the loan. On February 13, 1997, petitioners brought suit against the USDA and other parties, claiming civil rights violations. On August 19, 1997, the United States District Court for the Central District of Utah dismissed petitioners' case against the USDA.

On October 4, 1999, the USDA brought a foreclosure action against petitioners. Petitioners' farm was sold at a public auction during February 2001, and the sale proceeds were applied against the outstanding balance of the loan from the USDA. The proceeds nevertheless were insufficient to extinguish the loan. During the 2001 taxable year, the USDA issued Forms 1099-C, Cancellation of Debt, regarding the remaining balance of the loan. Petitioners did not receive the Forms 1099-C.

Petitioners own a home that they purchased in 1995 with a $43,000 mortgage and that they estimate to be worth $60,000 during the 2001 taxable year. Petitioners also own a truck which they purchased for $300; respondent concedes that this truck had negligible value in 2001. During the 2001 taxable year, petitioners owned stock that they purchased with a $15,000 loan. Petitioners received a distribution of $3,930.14 from Wells Fargo & Company during the 2001 taxable year.

Petitioners filed a Form 1040, U.S. Individual Income Tax Return, for the 2001 taxable year. They did not report any

income from the discharge of the loan.  The 2001 tax return listed petitioner Sioana U. Ngatuvai's occupation as a "cook" and petitioner S. Moli Ngatuvai's occupation as a "carpenter". Petitioners reported wages of $42,861,[3] of which $9,054.97 was withheld for Federal income tax, Social Security tax, Medicare tax, and State income tax.

Discussion

As a general rule, the Internal Revenue Code imposes a tax on the taxable income of every individual.  See sec. 1.  Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived" and further specifies that "Income from discharge of indebtedness" is included within this broad definition.  Sec. 61(a)(12).  The underlying rationale for such inclusion is that to the extent a taxpayer is released from indebtedness, he or she realizes an accession to income due to the freeing of assets previously offset by the liability.  See United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931).

Statutory exceptions to the above rule are set forth in section 108.  Section 108(a) excludes from the operation of section 61(a) indebtedness (1) which is discharged in a title 11 case, (2) which is discharged when the taxpayer is insolvent, (3)

---

[3] The Forms W-2, Wage and Tax Statement, indicate that petitioners received wages of $42,638.20.

which consists of qualified farm indebtedness, or (4) which consists of qualified real property business indebtedness.  Sec. 108(a)(1).

With respect to the exclusion based upon a discharge when the taxpayer is insolvent, the term "insolvent" is defined as the excess of liabilities over the fair market value of assets.  Sec. 108(d)(3).  Insolvency is determined on the basis of the taxpayer's assets and liabilities immediately before the discharge.  See id.; Traci v. Commissioner, T.C. Memo. 1992-708. Liabilities include excess nonrecourse debt, the amount by which a nonrecourse debt exceeds the fair market value of the property securing the debt, but only to the extent that the excess nonrecourse debt is discharged.

With respect to the exclusion based upon a discharge of qualified farm indebtedness, indebtedness of a taxpayer is treated as qualified farm indebtedness if two conditions are satisfied.  First, such indebtedness must be incurred directly in connection with the operation by the taxpayer of the trade or business of farming.  Sec. 108(g)(2)(A).  Second, 50 percent or more of the aggregate gross receipts of the taxpayer for the 3 taxable years preceding the taxable year in which the discharge of such indebtedness occurs is attributable to the trade or business of farming.  Sec. 108(g)(2)(B).

In general, taxpayers bear the burden of proof with respect to whether they are entitled to an exclusion. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Exclusions from gross income should be construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusion. See Dobra v. Commissioner, 111 T.C. 339, 349 n.16 (1998). The burden may shift to the Commissioner if the taxpayer introduces credible evidence and satisfies the requirements under section 7491(a)(2) to substantiate items, maintain required records, and fully cooperate with the Commissioner's reasonable requests. Sec. 7491(a).

In the present case, the burden of proof remains on petitioners, since they have neither taken a position as to whether the burden of proof should be placed on respondent nor established that they have complied with the requirements of section 7491(a). As such, petitioners have failed to meet their burden that they are entitled to any of the exclusions under section 108(a)(1). There is no evidence in the record that discharge of the USDA loan occurred as part of a bankruptcy proceeding or that the USDA loan constitutes a qualified real property business indebtedness. The record does not support a conclusion that the USDA loan is a qualified farm indebtedness. Petitioners were no longer in the trade or business of farming 3 years prior to the discharge of said loan in 2001, as required

under section 108(g)(2)(B).  While the record is not clear as to the exact date of discharge and can be characterized as incomplete, we are convinced that the preceding facts found by us are sufficient for us to conclude that petitioners were solvent at the time the USDA loan was discharged.  Their assets in 2001 included stock of approximately $15,000, a home estimated to be worth $60,000, a truck of negligible value, and moneys from wages and distributions in excess of $30,000.  In comparison, their liabilities in 2001 included the outstanding debt from their mortgage of $43,000, the excess nonrecourse debt of $30,714 from the USDA loan, and the $15,000 loan used to buy stock.  We sustain respondent's determination that petitioners must include $30,714 in their gross income for 2001, such amount representing the portion of the loan discharged by the USDA.[4]

Reviewed and adopted as the report of the Small Tax Case Division.

---

[4] "The moment it becomes clear that a debt will never have to be paid, such debt must be viewed as having been discharged." Cozzi v. Commissioner, 88 T.C. 435, 445 (1987); see also Rinehart v. Commissioner, T.C. Memo. 2002-71.  The fact that a taxpayer did not receive a Form 1099 does not convert taxable income into nontaxable income.  Vaughn v. Commissioner, T.C. Memo. 1992-317, affd. without published opinion 15 F.3d 1095 (9th Cir. 1993).

To reflect the foregoing,

<u>Decision will be entered for respondent with respect to the deficiency and for petitioners with respect to the accuracy-related penalty under section 6662</u>.